## Super v. Pennsylvania Turnpike Commission

*Elmer E. Harter, Owens & Detweiler*, for plaintiffs.
*Hull, Leiby & Metzger*, for defendant.

SOHN, J., May 11, 1959.—We have before us an action in trespass against the Pennsylvania Turnpike Commission. The three plaintiffs are Doris Super, Claire Super and Dorothy Super. In their amended complaint, they plead that they are residents of Roslyn, Pa., and New York City, N. Y., respectively. They aver in the amended complaint that on or about October 29, 1956, at about 8:20 p. m., the one plaintiff, Dorothy Super, was operating her automobile in a lawful manner in an easterly direction on the Pennsylvania Turnpike, east of the Willow Grove entrance to said turnpike, and plaintiffs, Claire Super and Doris Super, were passengers in said automobile.

When plaintiffs' automobile was about two miles east of the Willow Grove entrance to the Pennsylvania Turnpike, it had a flat tire, and plaintiff, Dorothy Super, pulled the automobile off the roadway of the turnpike to change the tire and wheel. Upon alighting from the automobile for said purpose, Dorothy Super and Claire Super fell into a drainage ditch and Doris Super suffered injuries in trying to assist Dorothy Super out of said ditch. They alleged that their injuries were caused by the negligence of defendant in maintaining the turnpike and with leaving the drainage ditch in a dangerous condition, without any cover or guard and without any light, sign or notice of the existence of said ditch, and without sufficient barrier or proper protection against injury to persons who lawfully used the turnpike.

To the amended complaint as above set forth, defendant filed a demurrer and moved to dismiss the action

on the ground that defendant, Pennsylvania Turnpike Commission, is an instrumentality of the Commonwealth of Pennsylvania, and is engaged in the performance of a governmental function and therefore is not liable in tort. Thus we have but one question before us, to wit: Is the Pennsylvania Turnpike Commission an instrumentality of the Commonwealth and engaged in the performance of a governmental function, so as to receive the Commonwealth's immunity from tort claims?

The question just stated has been before the courts of this State quite a number of times. In House v. Pennsylvania Turnpike Commission, 45 D. & C. 677, 678, (1942), President Judge Sheely of Adams County, specially presiding in Dauphin County, analyzed the creation of the Pennsylvania Turnpike Commission under the Act of May 21, 1937, P. L. 774, and quoted section 4 of that act as follows:

"The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth."

After reviewing the various aspects of that act and of the turnpike's operations, Judge Sheely stated further on page 681:

"We conclude that the Pennsylvania Turnpike Commission is a quasi public corporation and, as such, is an instrumentality of the Commonwealth engaged in the performance of a particular governmental function . . .

"The Turnpike Commission is an agency of the Commonwealth for a limited and special purpose with no funds under its control but the revenues from the turnpike which are specifically pledged for the payment of the turnpike bonds issued to pay the costs of construc-

tion. *There is nothing in the statute which authorizes the diversion of any portion of such funds for the payment of damages due to negligence of its agents or employes.*

"The Turnpike Commission, having but one function to perform, does not come within the rule making a distinction between governmental functions and business or corporate functions of a municipality. See Clamper v. Philadelphia, 279 Pa. 385, Steele v. McKeesport, 298 Pa. 116, Scibilia v. Philadelphia, 279 Pa. 549. The only authority given to the Turnpike Commission under the statute is the construction, maintenance, and operation of the turnpike, which is a governmental function: Balashaitis v. Lackawanna County, 296 Pa. 83. It follows that there can be no liability unless it be expressly imposed: Collins v. Commonwealth, 262 Pa. 572, 580. *There is nothing in the Turnpike Act imposing such liability, and the provision of the statute that the commision may sue and be sued is not sufficient for that purpose.*" (Italics supplied.)

In this case defendant's affidavits of defense raising questions of law were sustained.

In Malpica v. Pennsylvania Turnpike Commission, 65 Dauph. 302 (1953), President Judge Smith of this court quoted a portion of Judge Sheely's opinion in the House case and stated the following:

"It is a fundamental rule of constitutional law that a state cannot be sued without its consent: Commonwealth v. Berks County, 364 Pa. 447 (1950). Thus the Commonwealth is not liable for the torts of its officers and employees in the absence of a statute assuming or imposing such liability; and this immunity from liability for the negligence of its officers and employees extends also to agencies, instrumentalities or subdivisions of the state when in the exercise of public or governmental powers or in the performance of public or governmental duties: Brinton v. School District

of Shenango Township, 81 Pa. Superior Ct. 450 (1923), and authorities there cited, pp. 451-2. Therefore, since this immunity from liability extends to the Pennsylvania Turnpike Commission as an instrumentality of the Commonwealth engaged in the performance of a particular governmental function, we hold that the preliminary objection filed in the instant case must be sustained."

There are further decisions in Pennsylvania, one written by Judge Rupp of this court in Iron City Spring Co. v. Teer, 53 Dauph. 118 (1942), and we likewise have a decision of the county court of Allegheny County in Caputo v. Pennsylvania Turnpike Commission, 103 Pitts. L. J. 486. Valley Forge Gardens, Inc., v. Morrissey, Inc., 3 D. & C. 2d 164 (1953), is a closely related Philadelphia County common pleas case involving the State Highway and Bridge Authority.

On January 2, 1958, we filed an opinion in the case of Keefer v. Pennsylvania Turnpike Commission, 71 Dauph. 208 (1957), in which we considered the question whether the Pennsylvania Turnpike Commission is such an instrumentality of the Commonwealth and so engaged in the performance of a governmental function that it is in the same position as the Commonwealth with respect to the payment of interest. We quoted in this opinion the House decision and also the decision in the Malpica case, and then referred to Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355 (1944), where the Pennsylvania Supreme Court upheld a lower court decision disallowing interest on an arbitration award.

We feel that the Supreme Court of Pennsylvania has indicated by clear implication that it approves the decisions of the Dauphin County Court which we have cited above, for in Ewalt v. Pennsylvania Turnpike

Commission, 382 Pa. 529 (1955), at pages 534, 535, it says:

". . . the appellee contends that the Commonwealth's immunity from liability for damages due to injuries such as are pleaded by the plaintiffs [a continuing trespass arising out of the Commission's construction, operation and maintenance of the turnpike] also attends the Commission since Section 4 of the Turnpike Act of May 21, 1937, P. L. 774, 36 PS §652 (d), constitutes the Commission an instrumentality of the Commonwealth and Section 5 of the Western Pennsylvania Turnpike Extension Act of 1941, supra, declares that the Commission's exercise of the powers conferred by that Act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth. *The immunity which the appellee thus imputes to itself may be conceded.*" (Italics supplied.)

In support of plaintiffs' contention in this case, they point to Lowes v. Pennsylvania Turnpike Commission, 125 F. Supp. 681 (D. C. M. D. Pa. (1954)), and to Eastern Motor Express v. Espenshade, 138 F. Supp. 426 (D. C. E. D. Pa. (1956)). It is true that these two cases do not coincide with the opinion of the Dauphin County court and with the decision of the county court of Allegheny County. We believe they were written by the Federal judges involved with the idea that they would anticipate the probable rulings on the question by the appellate courts of Pennsylvania. However we fail to see how they can assist the present plaintiffs, for the same support from those Federal courts existed at the time that the prior opinions of this court were written.

The location given in paragraph 4 of plaintiffs' amended complaint is "about two miles east of the Willow Grove entrance to the Pennsylvania Turnpike." This location is a portion of the Pennsylvania Turn-

pike Delaware River Extension. The law regarding said Delaware River Extension is found in the Pennsylvania Turnpike Delaware River Extension Act of May 23, 1951, P. L. 335, 36 PS §658.1 et seq. In section 5 of the Delaware River Extension Act appears the following:

"The exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth": 36 PS §658.5.

In section 6 of said act under paragraph (c) it is provided:

"The commission may sue and be sued in its own name, plead and be impleaded: Provided, however, That any and all actions at law or in equity against the commission shall be brought only in the proper courts at the county of Dauphin": 36 PS §658.6(c).

Under paragraph (k), likewise appears the following:

"Adequate compensation shall be made by the commission out of funds provided under the authority of this act for damages to all public or private property taken, injured or destroyed in carrying out the powers granted by this act, or such property may be restored or repaired and placed in its original condition as nearly as practicable, as the commission may deem it expedient in any particular case": 36 PS §658.6(k).

We likewise must point out in considering whether there is immunity under the Pennsylvania Turnpike Delaware River Extension Act that section 18 thereof provides that after all and every obligation concerning the creation and construction and operation of the turnpike has been fully paid and its bonds retired, it shall become a part of the State highway system and shall thereafter be maintained by the Department of Highways.

At the oral argument before us, much stress was laid upon the case of Ewalt v. Pennsylvania Turnpike Commission, 382 Pa. 529 (1955), by both plaintiffs and defendants. Plaintiffs' counsel contended that defendant's counsel had quoted material from the Ewalt case out of context. Plaintiffs' counsel further argued that the Ewalt case in fact supported the contention of his clients, and had limited the sovereign immunity of the turnpike to the power of eminent domain. We do not believe that defendant's counsel did cite the Ewalt case out of context and that it is a most strained interpretation of that decision to say that the sovereign immunity of the turnpike is limited to the power of eminent domain.

In the Ewalt case, plaintiff sued to recover damages to ponds on his land situated quite some distance away from the right of way of the turnpike. It there appeared that dirt, stones and debris were being carried from the turnpike slopes into plaintiff's ponds. The lower court held that plaintiff had no standing to recover damages. The Supreme Court agreed with the lower court that there was no taking of property nor any entry thereon and that therefore the damages were consequential and were not direct. The Supreme Court also agreed with the lower court that the Commonwealth, unlike the municipal and other corporations and individuals, was not liable for consequential damages when exercising its power of eminent domain. The Supreme Court further conceded that the Commonwealth's immunity is imputed to the Pennsylvania Turnpike Commission by virtue of section 4 of the Act of May 21, 1937, P. L. 774, 36 PS §652d, which constitutes the commission an instrumentality of the Commonwealth, and by section 5 of the Western Pennsylvania Turnpike Extension Act of June 11, 1941, P. L. 101, 36 PS §654(d), which declares the commission's exercise of the powers conferred by that act in the con-

struction, operation and maintenance of the turnpike to be an essential governmental function of the Commonwealth.

What the Supreme Court really did hold was that the legislature had specifically provided for restoration or repair of property damaged or destroyed in the construction, operation and maintenance of the turnpike. This was by virtue of section 6(k) of the Western Pennsylvania Turnpike Extension Act of 1941, 36 PS §654e(k), and accordingly permitted plaintiff to recover damages. We are of the opinion that the Ewalt case really approves by implication the Dauphin County court decisions, the Allegheny County court decision, and that the Pennsylvania Turnpike Commission has a sovereign's immunity in tort actions.

There are later decisions in the District Court for the Eastern District of Pennsylvania which agree with the Dauphin County court decisions and the Allegheny County court decision and which follow the Pennsylvania Supreme Court decision in the Ewalt case. In Masse v. Pennsylvania Turnpike Commission, 163 F. Supp. 510 (1958), at page 511, District Court Judge Kraft says:

"After careful analysis we reach the conclusion that Ewalt v. Pennsylvania Turnpike Commission, 1955, 382 Pa. 529, 115 A. 2d 729, supplies the rule of decision that, except as otherwise expressly provided by statute, the Commission is immune from liability for negligent acts of its employees. In Ewalt, the Pennsylvania Supreme Court, conceding the general immunity from such liability which the Commission sought to impute to itself, held that the plaintiffs had a right of action against the Commission for alleged damage to and destruction of plaintiffs' property, because section 6(k) of the Western Pennsylvania Turnpike Extension Act of 1941, 36 PS Pa. §654 et seq., expressly imposed such liability."

We likewise have a later decision of our Supreme Court in Valley Forge Gardens, Inc. v. James D. Morrissey, Inc., 385 Pa. 477 (1956). There Justice Jones, now Chief Justice Jones, who had also written the Ewalt opinion, summarized the holding in the Ewalt case as follows on page 485:

"We held that the Commission was liable for the proven consequential damages because the Western Pennsylvania Turnpike Extension Act of 1941, P. L. 101, under which that section of the turnpike was constructed, expressly charged the Commission with the payment of compensation for property damaged or destroyed by the construction, operation and maintenance of the turnpike."

Likewise, in Philadelphia County, in DiRenzo v. Transamerican Freight Lines, 10 D. & C. 2d 723, 724 (1957), President Judge Bok, now Justice Bok of our Pennsylvania Supreme Court, says:

"In the Ewalt case, by way of dictum, the Supreme Court said: 'The immunity which the appellee thus imputes to itself may be conceded.' And in Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355 (1944), the Supreme Court held that the commission was not liable for interest on an arbitrator's award and cited the 'instrumentality' section of the act above set forth. If it is not liable for interest, a fortiori it should not be liable for tort damages.

"The question has expressly been passed upon by the Common Pleas Courts of Dauphin County and Philadelphia County (C. P. No. 3), in House v. Pennsylvania Turnpike Commission, 45 D. & C. 673 (1942) ; Valley Forge Gardens, Inc. v. Morrissey, Inc. 3 D. & C. 2d 164 (1953).

"The preliminary objections are sustained; the writ to join the Pennsylvania Turnpike Commission as an additional defendant is quashed, and the first count of the complaint of defendant against the Pennsylvania

Turnpike Commission as additional defendant is dismissed."

It thus appears that Judge Kraft in the Eastern District Court, Chief Justice Jones and Justice Bok all interpreted the Ewalt case in exactly the same way that defendant cited it and argued it to this court.

As the Ewalt decision, supra, clothed the turnpike with the Commonwealth's immunity under section 5 of the Western Pennsylvania Turnpike Extension Act of June 11, 1941, P. L. 101, 36 PS §654(d), we feel such protection must be extended to the Turnpike under section 5 of the Pennsylvania Turnpike Delaware River Extension Act of May 23, 1951, P. L. 335, 36 PS §658.5, for the reason that the sections are identical. In the Ewalt decision, the Supreme Court analyzed the Western Pennsylvania Turnpike Extension Act for the purpose of determining whether or not the legislature had expressly provided for the imposition of liability with respect to *real property damages*. We must now examine the Pennsylvania Turnpike Delaware River Extension Act to determine whether or not the legislature has expressly provided therein for the imposition of liability for *personal injury*. Here plaintiffs' amended complaint does not include damage to any property whatsoever, but does claim damages for personal injury. We have examined the Delaware River Extension Act and cannot find any provision in it providing for damages for personal injury. Section 6(k) of the Delaware River Extension Act simply provides:

"(k) Adequate compensation shall be made by the commission out of funds provided under the authority of this act for damages to all public or private property taken, injured or destroyed in carrying out the powers granted by this act, or such property may be restored or repaired and placed in its original condition as

nearly as practicable, as the commission may deem it expedient in any particular case": 36 PS §656.6(*k*).

An examination of paragraph (*k*) just quoted shows clearly that it only refers to property taken, injured or destroyed in carrying out the powers granted by this act, to wit, in its exercise of its right of eminent domain.

In the Masse case, supra, Judge Kraft in the Eastern District Court for Pennsylvania did not consider the Linger decision in the western district a correct one for he stated at page 514:

"Subsequent to the submission of briefs and oral argument in this case, the United States District Court for the Western District of Pennsylvania has held, in Linger v. Commission, 1958, 158 F. Supp. 900, that the Commission is not immune from liability for personal injuries resulting from negligence of Commission employees. Despite Ewalt and Valley Forge Gardens, supra, that case finds no rule of decision in the state law and apparently ignores the explicit language of Section 6(k) of the Turnpike Extension Acts. It concludes that the decisions of the lower Pennsylvania courts do not constitute a consensus of legal thought but, in so doing, gives no adequate significance to the decisions of the Dauphin County court, though, for eighteen years under nine Turnpike Extension Acts, the court of Dauphin County alone has had venue in suits against the Commission. For the reasons heretofore stated we reach an opposite conclusion. We hold that, under Pennsylvania law, the Commission is immune from the liability here sought to be imposed for the plaintiff's personal injuries."

We have in addition the opinion of Judge Kirkpatrick in Super v. Pennsylvania Turnpike, civil action no. 25477, United States District Court for the Eastern District of Pennsylvania. Plaintiffs in the

eastern district court action were two of the very plaintiffs who are presently before this court, and their suit in the eastern district court was dismissed by a brief opinion. Judge Kirkpatrick there says:

"The plaintiffs bring this action against the defendant seeking to recover damages for personal injury caused by defendant's tortious conduct. The question raised by this motion has been before this court only once before, and it was decided by Judge Kraft in Masse v. Pennsylvania Turnpike Commission, 163 F. Supp. 510, that the defendant was not liable for damages of this nature. The opinion of Judge Lord, of this court, in Eastern Motor Express v. Espenshade, 138 F. Supp. 426, might be interpreted as expressing the view that the commission was liable generally for the torts of its agents and employees—personal injury as well as damage to property—but Judge Kraft pointed out correctly that in the Espenshade case the only question before the Court, and hence the only point actually decided, was whether or not the Commonwealth was liable for property damage. The two decisions are, therefore, not inconsistent.

"The question is far from being free of doubt, but the plaintiffs' argument has not convinced me that the decision in the Masse case, supra, is clearly wrong, and it is my duty to follow, if at all possible, a decision of this court which squarely rules the precise question before me. Mayer v. Marcus Mayer Co., 25 F. Supp. 58.

"The motion to dismiss is granted."

It is our opinion here that we must follow the decision of the Pennsylvania Supreme Court and the consistent opinions of the county courts of Pennsylvania, which have been supported by the Federal courts in the Eastern District of Pennsylvania. We therefore make the following

*Order*

And now, May 11, 1959, the demurrer of defendant, Pennsylvania Turnpike Commission, filed as a preliminary objection to the amended complaint, is hereby sustained and judgment is entered in favor of defendant, Pennsylvania Turnpike Commission, and against plaintiffs, Doris Super, Claire Super and Dorothy Super.